IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MELISSA KOCH,                               )
                                            )          No:
                        Plaintiff,          )
                                            )
            v.                              )
                                            )
MACK TRUCKS, Inc.,                          )
                                            )
                        Defendant.          )

## COMPLAINT

AND NOW comes Plaintiff, Melissa Koch, by and through her counsel, Gross McGinley,

LLP, and files this Complaint based upon the following:

## I.   INTRODUCTION

1.     Plaintiff Melissa Koch initiates this action seeking an award of damages,

attorney's fees, and other relief against her employer, Defendant Mack Trucks, Inc. for violations

of Title VII of the Civil Rights Act of 1964, including unlawful gender discrimination and

retaliation, and other applicable state and federal law.

## II.   THE PARTIES

2.     Plaintiff Melissa Koch ("Plaintiff") is an adult individual residing at 1563 Kaitlyn

Road, Allentown, Pennsylvania 18103.

3.     Defendant Mack Trucks, Inc. is a corporation created and existing pursuant to the

laws of the Commonwealth of Pennsylvania, with a principle place of business at 7000 Alburtis

Road, Macungie, Pennsylvania 18062.

4.     At all times relevant hereto, Defendant acted by and through its agents, servants,

and employees, each of whom acted within the scope of his or her job responsibilities.

5.    Defendant is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964 because it is engaged in an industry affecting commerce and because it maintains or maintained fifteen (15) or more employees for each working day in each of twenty (20) or more weeks in the current or preceding calendar year.   Additionally, at all relevant times hereto, Defendant maintained a sufficient number of employees to satisfy the jurisdictional prerequisites of the Pennsylvania Human Relations Act.

III.   **JURISDICTION AND VENUE**

6.    The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in length.

7.    This Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

8.    The supplemental jurisdiction of this Court to consider Plaintiff's claim arising under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. §951 *et. seq.* is invoked pursuant to 28 U.S.C. §1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because said claim is sufficiently related to one or more of the claims within the Court's original jurisdiction in that it forms part of the same case or controversy.

9.    Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§1391(b)(1) and 1391(b)(2) because Defendant is located in and/or conducts business in this judicial district and because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.

## IV.    PROCEDURAL AND ADMINISTRATIVE REQUIREMENTS

10.    The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in length.

11.    Plaintiff has satisfied the procedural and administrative conditions precedent to the institution of the instant action as follows:

a.    On or about June 5, 2015, Plaintiff filed a timely written charge of discrimination against Defendant with the Philadelphia office of the Equal Employment Opportunity Commission ("EEOC") alleging unlawful discrimination on the bases of gender, age, disability and retaliation.

b.    On June 16, 2016, the EEOC issued a Notice of Right to Sue with regard to said Charges.

d.    Plaintiff has exhausted her federal and state administrative remedies with respect to the allegations of this Complaint.

e.    This Complaint has been filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.


## V.    FACTUAL ALLEGATIONS

12.    The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in length.

13.    Plaintiff is a female who suffers from Multiple Sclerosis.

14.    Defendant is an international manufacturer of trucks.

15.    On or about April 23, 1997, Plaintiff was first hired by Defendant at the Winnsboro location.

16.     During the course of her employment, Plaintiff was subjected to a pattern of harassment and discrimination based on her gender, age and Multiple Sclerosis diagnosis.

17.     Moreover, during the course of her employment, Plaintiff has been subjected to harassment and retaliation because of her refusal to be silent in the face of her continuing discrimination.

18.     On May 18, 2010, Plaintiff began working as a Production Supervisor at Defendant's Macungie location.

19.     Prior to her first day on the production floor in the Macungie facility, Plaintiff advised Defendant's nursing staff of her Multiple Sclerosis. The nursing staff responded to Plaintiff by questioning how Plaintiff was hired and stating that "they don't hire people like you in here." Plaintiff indicated that she had transferred from another facility and the nursing staff responded by stating "that explains how you got in with MS."

20.     Plaintiff was the only female Production Supervisor in the Macungie facility from 2010 until 2014.

21.     By June of 2010, Plaintiff was already experiencing numerous issues with two of her male supervisors. Specifically, those supervisors would consistently instruct her employees to take action that was contrary to the directions that Plaintiff had given said employees.

22.     Moreover, the supervisors commented that she carried her radio, which she used for work purposes, only as a "fashion accessory."

23.     On July 1, 2010, Plaintiff reported these issues to a supervisor named Kevin Duchala.

4

24.     Mr. Duchala informed Plaintiff that she was going to be moved to the engine line, an area where Plaintiff had no previous experience and an area which sat between two ovens, thus creating an environment of extreme heat that was very difficult for Plaintiff in light of her Multiple Sclerosis.

25.     Plaintiff reported the issues with her new location and was subsequently moved to the cabline section of the facility on July 7, 2010.

26.     In June of 2011, Plaintiff met with Sherry Palpoli, HR Business Partner, local title of NBU (Non Bargaining Unit) HR Manager, to discuss her concerns that Defendant was violating her rights under the Americans with Disability Act ("ADA").

27.     In the beginning of 2012, Plaintiff's FMLA paperwork was questioned by Defendant and Plaintiff was required to obtain paperwork from a previous doctor to confirm that her Multiple Sclerosis was "chronic."

28.     On June 21, 2012, Plaintiff received an email from Defendant's HR department requiring her to recertify her Multiple Sclerosis condition every sixty (60) days.

29.     On July 12, 2012, Plaintiff received another email from HR which required Plaintiff to receive another letter from her doctors stating that her Multiple Sclerosis condition was "chronic."

30.     On July 16, 2012, Plaintiff provided Defendant with a letter from her physician stating that Plaintiff suffered from Multiple Sclerosis, chronic relapsing type.

31.     At some point in the Fall of 2012, Plaintiff overheard a second shift supervisor discussing his pay rate, which was more than what Plaintiff was making, despite the fact that the second shift supervisor was a new hire with no management experience.

32.     In a discussion with Jim Flannery, Director of Operations Macungie Facility, shortly thereafter, Mr. Flannery told Plaintiff that her allegations of unequal pay were untrue.

33.     On January 7, 2013, Plaintiff received yet another email requiring her to recertify her FMLA paperwork because her condition was not listed as "chronic."

34.     On January 18, 2013, Plaintiff informed Ms. Palopoli that she had already provided Defendant with all of the necessary paperwork and that she would be filing a claim with the Equal Employment Opportunity Commissions if the company continued to harass her.

35.     In April of 2013, Plaintiff received a 9% increase in her pay made clear by Bonnie Miller, HR Business Partner Mack Defense Allentown, internal investigator assigned by Gary Forget, VP HR Americas Cab and Vehicle Assembly, that plaintiff believed was to bring her more in line with other male production supervisors.

36.     In August of 2013, Plaintiff applied for a position within the Industrial Engineering Department of the Defendant Company.

37.     Defendant refused to release Plaintiff from her current position in order to take a new position.

38.     Plaintiff's MS causes, inter alia, dietary restrictions.

39.     Throughout 2014, 2015, and 2016 Defendant made no accommodations for Plaintiff despite the fact that Plaintiff had notified HR about her dietary restrictions. Plaintiff was told by Loretta Lowman in May 2016 that dietary accommodations are Plaintiff's responsibility, not management's.

40.     In April of 2014, Plaintiff, along with Leonard Harris and Jon Tosh, met with Gary Forget, VP HR America's Cab and Vehicle Assembly, to discuss issues that Plaintiff was constantly encountering within Defendant's Macungie location. Plaintiff was told that she would

not be retaliated against in response to the information contained in her complaints and that she was protected by the company's whistleblower policy.

41.     At Mr. Forget's request, Plaintiff also met with the Macungie plant manager, Roger Johnson, to relay her concerns about retaliation, discrimination and harassment.

42.     On June 12, 2014, Plaintiff emailed Mr. Forget and indicated that she felt that it was necessary to file a formal complaint due to the retaliation issues at Defendant's facility.

43.     In September of 2014, Plaintiff interviewed for a position with Defendant's Greensboro plant.  Upon hearing about her interview, Plaintiff was told from bystanders that Plaintiff's immediate supervisor's supervisor, Leroy Coleman, had "lost it" due to not granting permission for the interview.

44.     Despite a positive interview, Plaintiff did not receive the position. When Plaintiff inquired as to why she did not receive the position, she was informed by Josef Stenman that she could not move to Greensboro at that time due to the recent purchase of a home in Macungie. The position posted was for either the Macungie or Greensboro locations, and the male granted the position also refused to move and still resides in the Macungie areas to date.

45.     In December of 2014, Defendant hired a male applicant to replace Mr. Tosh's Business Team Leader Chassis Line position in the Macungie facility.  Plaintiff questioned Mr. Flannery as to why she had not even been considered for the job despite the fact that she had filled in for Mr. Tosh successfully on many occasions. Mr. Flannery responded by telling Plaintiff that she would be responsible for training the new male hire because he did not have any experience.

46.     In February of 2015, Bonnie Miller, HR Business Partner Mack Defense, informed Plaintiff that she had completed her investigation of Plaintiff's claims.  Ms. Miller informed Plaintiff that there were numerous issues found. Ms. Miller also informed Plaintiff that she reported the issues to the President of HR in Sweden, that the responsible parties would be dealt with, and that the file would be sent to Defendant's legal team as well as head of HR.  Ms. Miller further informed Plaintiff that two positions were opening up that Plaintiff would have first opportunity for and would be relayed by Plant Manager Roger Johnson who gave them to Macungie HR Director Noreen Morgan to relay. Ms. Miller apologized numerous times for the behavior of the HR associates Plaintiff had been dealing with, and finally made clear that the 9% raise Plaintiff had previously received was done to bring Plaintiff more in line with the pay of male production supervisors.

47.     However, upon information and belief, Defendant Company never actually took any actions as a result of the investigation.

48.     In April of 2015, Plaintiff retained counsel who wrote to Defendant and outlined the discrimination that Plaintiff had endured and requested that Plaintiff be provided with accommodations and provided with fair and meaningful opportunities to apply for promotions and positions which met her qualifications and took into consideration the accommodations needed due to her Multiple Sclerosis.

49.     In May of 2015, Plaintiff interviewed for an engineering position that she had not applied for.  Plaintiff was made to believe that she was interviewing for an engineering position that she in fact had previously applied for.  As part of this interview, Plaintiff was forced to spend a long amount of time in the "chassis line" which directly violated her FMLA restrictions

including but not limited to extended standing, extended walking and overtime due to no knowledge of chassis line.

50.     In both April and May of 2015, Plaintiff was asked to work overtime by a supervisor despite that supervisor's knowledge that Plaintiff was unable to do so because of her Multiple Sclerosis.  Defendant's overtime restrictions limit overtime. The only overtime worked was when Plaintiff was company critical with full production operations work causing no other supervisors to be able to fill in. Shay was demanding "voluntary" overtime in the final department with all other production supervisors available who had no overtime restrictions.

51.     Following Ms. Miller's investigation, Gary Forget said he would direct Noreen Morgan to pay the closing costs promised by previous HR Director Steve Friedle out of the plant's internal budget. The discussions ceased after legal counsel was retained.

52.     On June 15, 2015, Plaintiff filed an EEOC Claim regarding age, disability and retaliation.

53.     On April 4, 2016, Plaintiff was informed by Loretta Lowman, HR Business Partner Greensboro, that annual merit raises would take place on April 28, 2016.

54.     On April 28, 2016, Plaintiff was told that she would not be receiving a pay raise because she was making more money than the other sales engineers.

55.     Upon information and belief, Plaintiff was not making more money than other male sales engineers.

56.     On May 11, 2016, Plaintiff was told that she would be on the same evening phone schedule as everyone else if she did not provide her restrictions.

57.     In June of 2016, Plaintiff's FMLA documents were returned to her after Defendant had possession of the documents for over two weeks.  Plaintiff was informed that FMLA was not available for intermittent use but would only be allowed for one week every three months for specific IV steroid treatments.  Moreover, Plaintiff was told that both her direct manager and HR would have to sign and approve each leave before it was considered "protected."

58.     Defendant does not have effective harassment and nondiscrimination policies and procedures, and has not established any meaningful policies, procedures, practices or controls to ensure equal employment opportunity and nondiscrimination within the workplace.

59.     As a direct and proximate result of Defendant's above-described gender discrimination, harassment and retaliation, Plaintiff suffered emotional distress, humiliation and mental anguish.

60.     As a direct and proximate result of Defendant's above-described gender, age and disability discrimination, harassment and retaliation, Plaintiff lost wages, benefits, and incurred other compensable losses and compensatory damages.

61.     Defendant was aware that Plaintiff had been subjected to gender, age and disability discrimination, harassment, and retaliation, in part because of her complaints to management and to federal and state agencies, but failed to timely, adequately, or effectively respond to her complaints and circumstances, and in fact did nothing to stop the gender discrimination, harassment and retaliation.

62.     Defendant's conduct described above was intentional, deliberate, willful and in callous disregard of Plaintiff's rights.

## COUNT I
## TITLE VII – GENDER DISCRIMINATION

63.     The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in length.

64.     Plaintiff is a member of a protected class and was qualified for her position as a Production Supervisor.

65.     During her employment with Defendant, Plaintiff was not treated or compensated in the same manner as her male counterparts and she suffered adverse employment actions, which resulted in an alteration of her compensation, conditions, and privileges of employment.

66.     The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her gender.

67.     As a result of Defendant's unlawful gender discrimination, Plaintiff has suffered damages as set forth herein

WHEREFORE Plaintiff seeks the damages set forth in the *Ad Damnum*/Prayer for Relief clause of this Complaint, *infra*.

## COUNT II
## TITLE VII – RETALIATION

68.     The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in length.

69.     In complaining to Defendant about the gender discrimination and harassment, and in filing a complaint with the EEOC and Pennsylvania Human Relations Commission, Plaintiff engaged in activity protected under Title VII of the Civil Rights Act of 1964.

70.     Defendant retaliated against by continuing to engage in harassment of Plaintiff as a result of her complaints of gender, age and disability discrimination and harassment.

71.     Defendant most recently retaliated against Plaintiff by job blocking for four applications to positions in Greensboro, one of which Plaintiff had an extensive and productive interview for and to which the manager will not respond to Plaintiff's emails though the position has not been listed as filled weeks after Plaintiff was told it was filled.

72.     Defendant also subjected Plaintiff to other adverse employment actions including but not limited to retaliation through withholding of annual merit raise in 2016 (despite it being in Plaintiff's employment contract signed in June 2015 that she would be eligible and a raise being given to male coworkers who do the same job raising their pay above Plaintiff's). It is believed and therefore averred that this was further done in retaliation after Plaintiff asked Loretta Lowman about meal accommodations and providing job training.

73.     In acting as aforesaid, Defendant engaged in unlawful retaliation against Plaintiff in violation of Title VII of the Civil Rights Act of 1964.

74.     As a result of Defendant's unlawful retaliation, Plaintiff has suffered damages as set forth herein.

WHEREFORE Plaintiff seeks the damages set forth in the *Ad Damnum*/Prayer for Relief clause of this Complaint, *infra*.

**COUNT III**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

75.     The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in length.

76.     As described herein, Plaintiff is an individual with a disability because her Multiple Sclerosis substantially limits one or more major life activities, as defined by the ADA.

77.     At all times relevant hereto, Plaintiff has a record of such impairment and/or Defendant perceived Plaintiff as having a disability.

78.     Plaintiff was qualified for her position and could perform all of the essential job functions without accommodation and/or all essential job functions with reasonable accommodation.

79.     Defendant never offered an alternative accommodation to Plaintiff, and took adverse employment actions against Plaintiff as a result of her actual and/or perceived disability, in violation of 42 U.S.C. § 2112(a).

80.     Defendant told Plaintiff that she would have to find a "sponsor", on her own, to provide training for her job for any assistance needed.

81.     Defendant's violation of the ADA was intentional and undertaken after discovery of Plaintiff's Multiple Sclerosis, which infringed upon Plaintiff's federally protected right to be free of discrimination on the basis of her disability.

82.     As a direct and proximate result of Defendant's illegal and discriminatory employment actions and/or practices, Plaintiff has suffered and continues to suffer damages, as claimed herein.

**COUNT IV**
**PENNSYLVANIA HUMAN RELATIONS ACT**

83.     The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in length.

84.     The foregoing actions and omissions of Defendant also constitute unlawful discrimination and retaliation in violation of the Pennsylvania Human Relations Act, 43 Pa.C.S.A. §951, *et seq.*

85.     As a result of Defendant's unlawful conduct as aforesaid, Plaintiff has suffered damages as set forth herein.

WHEREFORE Plaintiff seeks the damages set forth in the *Ad Damnum*/Prayer for Relief clause of this Complaint, *infra*.

**COUNT V**
**AGE DISCRIMINATION IN EMPLOYMENT ACT**

86.     The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in length.

87.     Plaintiff is over forty (40) years old, and is therefore in the class of persons protected by the ADEA.

88.     Defendant treated Plaintiff in a manner different than that in which Defendant treated younger employees, and subjected Plaintiff to adverse employment actions because of her age.

89.     The conduct described above constitutes unlawful discrimination against Plaintiff on the basis of age in violation of the ADEA.

90.     As a direct result of Defendant's unlawful discrimination, Plaintiff has sustained loss of earnings, severe psychological and emotional distress, and loss of future earning power.

WHEREFORE Plaintiff seeks the damages set forth in the Ad Damnum/Prayer for Relief clause of this Complaint, infra.

**COUNT VI**
**UNLAWFUL DISCRIMINATION IN VIOLAITON OF THE EQUAL PAY ACT, 29 U.S.C. § 206(d), *et seq*.**

91.     The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in length.

92.     As noted, Defendant denied Plaintiff with same salary and benefits that was awarded to male employees with similar and/or less experience and qualifications, thereby resulting in unequal and discriminatory pay practices based on gender.

93.     Upon information and belief, by compensating female employees, and Plaintiff in particular, less than male employees with similar and/or less experience and qualifications, Defendant violated the Equal Pay Act, 29 U.S.C. § 206(d), *et seq*, and continues to violate the Equal Pay Act.

94.     As a direct and/or proximate result of the above-described discriminatory actions of Defendant, Plaintiff suffered financial injury including but not limited to past loss of earnings from the date of Plaintiff's date of hire, future loss of earnings, loss of earning potential and loss of benefits.

95.     As a direct and/or proximate result of Defendant's discriminatory conduct, Plaintiff suffered professional injuries, including but not limited to injuries to her professional development.

96.     Defendant's conduct described above was/is intentional and was/is done willfully and with malice or with reckless indifference to the protected rights of Plaintiff as a female.

97.     Plaintiff has also incurred significant legal fees, and will continue to incur additional legal fees, as a result of Defendant's discriminatory conduct and having to bring this action.

WHEREFORE Plaintiffs seek the damages set forth in the *Ad Damnum*/Prayer for Relief clause of this Complaint, *infra*.

## COUNT VII
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

98.     The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in length.

99.     At all relevant times hereto, Plaintiff suffered from a serious health condition, as defined by the FMLA.

100.    Despite Plaintiff's serious health condition, Defendant failed to make accommodations for Plaintiff.

101.    As a direct and proximate result of Defendant's illegal and discriminatory employment actions and/or practices, Plaintiff has suffered and continues to suffer damages, as claimed herein.

WHEREFORE Plaintiffs seek the damages set forth in the *Ad Damnum*/Prayer for Relief clause of this Complaint, *infra*.

### *AD DAMNUM* CLAUSE/PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant and that it enter an Order as follows:

a.      Defendant is to be permanently enjoined from discriminating against Plaintiff, or any other employee, on the basis of gender, age, disability and/or any other basis prohibited under federal or state law;

b.      Defendant is to be prohibited from continuing to maintain its unlawful policy, practice, or custom of discriminating against employees based on their gender, age or disability, and is to be ordered to promulgate an effective policy against such discrimination and to adhere thereto;

      c.      Defendant is to be permanently enjoined from retaliating against Plaintiff, or any other employee, for engaging in conduct that is protected under federal or state law;

      d.      Defendant is to compensate Plaintiff, reimburse Plaintiff, and to make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's unlawful actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, promotions, and reinstatement.  Plaintiff should be accorded those benefits illegally withheld from the date she first suffered discrimination and/or retaliation at the hands of Defendant until the date of verdict;

      e.      Plaintiff is to be awarded actual damages, as well as damages for the pain and suffering and humiliation caused to her by Defendant's actions;

      f.      Plaintiff is to be awarded liquidated and/or punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct, and to deter Defendant or any other employees from engaging in such misconduct in the future;

      g.      Plaintiff is to be accorded any and all other legal and/or equitable relief as the Court deems necessary, just, and proper;

      h.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

      i.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

j.      Plaintiff is to be granted such additional injunctive or other relief as she may request during the pendency of this action in an effort to ensure Defendant does not engage – or ceases engaging – in illegal retaliation against witnesses to this action;

k.      The Court is to maintain jurisdiction of this action after verdict to ensure Defendant's compliance with its Orders therein; and

l.      Plaintiff's claims against Defendant are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

GROSS MCGINLEY, LLP

BY: _____

PATRICK J. REILLY, ESQUIRE
ID No: 32235
SAMUEL E. COHEN, ESQUIRE
ID NO.: 204617
ADRIAN K. COUSENS, ESQUIRE
ID NO: 320197
Attorneys for Plaintiff
33 South 7th Street
PO Box 4060
Allentown, PA 18105-4060
Phone:  610-820-5450
Fax:     610-820-6006

Date:  September 9, 2016